Denio, Ch. J.
This suit was commenced by bill in the late court of chancery, and the principal object of it was to require the defendant to account for the proceeds of the sales of certain shipments of brandies by parties in France to the defendant in the city of New York. There were five shipments in all, by as many different vessels, made in the years 1844 and 1845, and they were made pursuant to a contract between the owners of the brandies, now represented by the plaintiff, and the defendant. By that contract the said owners constituted the defendant their sole agent.for the sale of their liquors in the United States, and the defendant undertook, for certain commissions specified therein, to make sale of such as should be shipped to him for that purpose, to make advances of a certain portion of the cost price, and render accounts of sales and remit the proceeds, after deducting the advances, &c., and to furnish periodical accounts current, &c. No question now arises upon any of the shipments except one, namely, that which was sent by the brig “ France,” which arrived in the port of New York about the tenth day of May, 1845, and which consisted of one hundred and thirty-eight casks of brandy, consigned by the owners, which, for shortness, I will call the plaintiff, to the defendant, to sell on commission pursuant to the contract. The referee before whom the case was tried, after the jurisdiction over it had devolved upon the supreme court, found that a balance was due the plaintiff upon the other shipments; but upon the shipment by the “France” he found a large balance due to the defendant, and his report was in favor of the defendant for $8,158.53. The principal item allowed in favor of the defendant, against the plaintiff, and the only one necessary to be now examined, was the sum of $7,259.98, for duties *438 payable to the treasury of the United States, upon the brandies imported by the brig “France,” and the interest thereon for several years. The referee held that the-defendant was liable to the government for these duties, and that, although he had not paid, them, they were a proper charge in his accounts against the plaintiff. The general term of the supreme court concurred in this view, and affirmed the judgment entered on the report. This presents the only question which is raised by this appeal on behalf of the plaintiff. On or shortly after the arrival of the brig “France,” the casks of brandy shipped by the plaintiff were placed in a public store-house, No. 27 Beaver street, under the charge of the collector of the port, and remained there until July 19th thereafter, when a fire occurred in the building by which the greater part of them, together with a large amount of other similar property, was destroyed. A few casks of the plaintiff’s brandies were saved in a damaged condition, and were sold by the custom-house authorities, who applied the proceeds to the discharge of the duties thereon, which left a small balance which was applied towards the duties on the part wholly destroyed. The amount allowed to the defendant on account of his supposed liability to the government was the balance of the amount of duties on the whole shipment. The manner in which the plaintiff’s brandies came into the public store is not stated in the proof, or the referee’s report, or in the statement of facts prepared by the general term. But it is conceded that they were not there under bond. Indeed, that circumstance is a part of the defendant’s case; for if they had been bonded according to the provisions of the revenue laws, and had been lost, as they were, by an accidental fire, the duties would have been remitted pursuant to an act of congress, passed after the fire and before the trial. That provision is in the following language: “Be it further enacted,” &c., “ that the secretary of the treasury, be and he is hereby authorized, *439 upon production of satisfactory proof to.Mm of the actual injury or destruction, in whole or in .part, of any goods, wares or merchandize, by accidental fire or other calamity, in any public or private ware-house, under bond, or in the appraiser’s store undergoing appraisal in pursuance of law or regulations of the treasury department, or while in transportation under bond from the port of entry to any other port of the United States, to abate or refund, as the case may be, out of any moneys in the treasury not otherwise appropriated, the amount of import duties accruing thereon.” (Laws of the U. S. of 1853-54, page 273; § 8.) The referee states in Ms conclusions that he considered tMs act not to be applicable to the case, on the single ground that these liquors did not appear to have been under bond. The system upon wMch the defendant was allowed to recover for these duties against the plaintiff was, that, as importer of the property, he was personally liable for their payment; that the plaintiff, as owner and sMpper, was not liable to the government for them, though, as between Mm and the defendant, they ought to discharge him, and hence that the defendant could not be indemmfied respecting them, except by recovering their amount in tMs action. I shall not spend time in inquiring whether or not the conclusion would follow if the premises were admitted. But I am of opinion that the defendant was not shown to. be the importer of the brandies, in the sense of the act of congress. The provisions concerning the entering, unloading, and storing of goods imported from foreign countries were governed by the act passed March 2, 1799. (1 U. S. Stat. at Large, p. 627.) The warehousing system, wMch modified some of these provisions, had not then been passed. It must be conceded, that if the defendant had assumed the position of consignee of this property, he occupied the same situation and was subject to the same liabilities as though he had imported it on Ms own account. As between Mm and the plaintiff, he was no doubt charge *440 able as consignee. The goods were sent by the plaintiff to him pursuant to the. contract, and it is to be assumed that the bill of lading was made out in his name as consignee, and was indorsed to him, and that the ship’s manifest showed him to be the consignee. He owed to the plaintiff the duty of receiving and taking care of the brandies, and paying the freight and duties upon them and-selling them according to the agreement. It is,another question whether 'he had assumed tnht position in respect to the government and its officers. To determine this an examination of the revenue act above mentioned is necessary. According to that act, a vessel on arriving from a foreign port is to make a report on oath, with an account of her cargo. (§ 30.) This is to be done by the master. The next step is for the importer or consignee to make an entry of the importation, the name of which is given, consisting of a detailed statement of the kind and value of the goods, the marks on the packages, &c., and he is to exhibit the invoices. (§ 36.) A permit must then be obtained to land the goods. As a condition to granting it the duties, of which an estimate' is to be made by the collector, are to be first paid or secured to be paid in the manner afterwards provided. (§49.) The landing of goods without a permit having been obtained, is made highly penal. Each person concerned in it is subject to a heavy penalty, and is disqualified from holding any office of trust or profit for seven years, and the goods are forfeited. (§ 50.) Section sixty-two repeats that fill duties on imported goods shall be paid, or secured to be paidj before a permit to land shall be granted. If secured instead of being paid, it is to be by a bond of the importer, with sufficient sureties, conditioned to pay the amount, in case of importations like that in question, in eight, ten and twelve months. There is a proviso that in lieu of sureties to the bond, the collector may accept a deposit of the goods, or such part of them as may be sufficient, which are to be kept in store at the expense and risk *441 of the importer, and may be sold if the duties for which the bond was given are not paid. There is no provision for dispensing with the importer's or consignee's bond, in any case, unless the duties are paid down. Goods thus-deposited as security for the duties which are also secured by the bond of the importer, are said to be bonded, or to be in a public store-house in bond. Goods thus brought on shore are fully imported. The importer or the con-, signee, who stands in his position, is personally liable, and by the general law is obliged to pay the duties to the government, though the goods should be. destroyed or stolen. His liability would generally be established by the bond, but if the duty of taking a bond should be inadvertently or fraudulently omitted, the importer or consignee would still be personally liable on the obligation created by the statute imposing duties upon the importer in the case of a foreign importation. Hence in The United States v. Seymour (1 Wash. C. C. R. 482), where the bond of a person other than the importer had been taken, on a transfer of the property to such person by the importer, which had proved unavailing, it was held that the latter was still liable to the government by force of the statutory obligation. The goods had been landed under the usual permit, so that no question could be made but that the defendant had imported them. The same general doctrine of the original and absolute liability of the importer, and the identity of the consignee with the importer in his own right, is recognized in the other cases cited by the defendant’s eojmsel. (Wolfe v. The Howard Ins. Co. 1 Sand. S. C. R. 124; Same v. Same, 3 Seld. 583; Knox v. Devins, 5 Mason C. C. R. 380; Meredith v. The United States, 13 Pet. 486.) In this case the defendant did not pay the duties, for if he had done so this question could not have arisen; he did not give any bond, with or without sureties; for if that had been done the duties would have been remitted pursuant to the act of 1854, and this judgment never could have been *442 recovered. How, then, did he procure a permit to land the goods, if he did procure one, or, if he did not, how did they get into the public store? This, I think, is answered by a reference to the fifty-sixth section of the act. It provides, in substance, that if goods remain on board for fifteen days after the master reports, without a permit for landing having been obtained, the inspectors of the revenue are to take possession of them and put them in a public store, to be kept at the charge and risk of the owners, and they are to be sold to pay the duties, if not claimed within nine months. The fifteen days may be reduced to five with the consent of the master of the vessel, or of the owner or consignee of the goods. I can not conceive of any other way in which these brandies could have been unladen from the vessel and stored in the public warehouse, than that here provided. If there is any other method the defendant should have shown it. If they came, to land under these provisions, the defendant did not assume the position of importer or consignee respecting them. He may have violated his duty to the plaintiff as the shipper and- owner of the property, but that would not give the government any title as against him. Ho person can be placed in the situation of consignee without his consent. If one in a foreign country send goods by ship to 'a merchant in Hew York, the merchant may receive them or not, at" his pleasure; and if he refuse contrary to his duty to the consignee, still he does not constitute himself §,n importer of the goods. He can not be made the consignee without accepting the consignment, and the government acquires no rights against him if he choose to renounce the. character with which he is sought to be clothed. To be sure, one in whose name a bill óf lading is made out or. endorsed is in one sense a consignee, though he may never have heard of the shipment, 'and though he should renounce that character. But this question does not turn on verbal distinctions. When. the statute or the *443 adjudged cases speak of the consignee as, in judgment of law, an importer, and chargeable with duties, it is a person to whom goods are consigned and who accepts the consignment, who is intended. It would be preposterous to charge a person with liabilities imposed by law on a consignee as virtual importer, when he has refused or neglected to have anything to do with the goods consigned. The section last mentioned, I think, recognizes the distinction between a mere nominal consignee, who is made such by being named in the manifest or bill of lading, and one who has assumed the responsibilities of that position. It allows a consignee, among other parties, to give a valid consent that unclaimed goods may be landed within the fifteen days. The convenience of the ship owners or of the revenue officers requires that a vessel should be discharged as soon after its arrival as possible. Hence the statute permits the period for landing unclaimed goods to be shortened by the consent of the consignee, master, &c., but I conceive that he does not, by giving such consent, commit himself to any further connection with the goods.' I conclude, therefore, that the. Ian ding and storing the goods by the revenue officers, under the circumstances supposed, did not create any liability against the defendant in favor, of the government. Whether the plaintiff, as owner, would have been liable to pay them is a different question. It would seem reasonable that, having availed themselves of the privilege of the port, they ought to pay the duties imposed by the government to which the port 'belonged. I doubt, how,ever, whether the law has provided any other remedy for their collection than the sale of the goods. That would ordinarily be a sufficient remedy. It failed in this case on account of the destruction of the property by fire; but that afforded no reason for charging the defendant if he would not have been liable if the goods had not been burned. I have been confirmed in this conclusion by decisions of the .treasury department, evidence of which was *444 produced by the plaintiff’s counsel and quoted in Ms brief. By these it appears that in 1843, during the incumbency of the late John C. Spencer, certain goods imported from abroad were sent to the public store as unclaimed goods, the consignee not choosing to enter, them for. landing. The collector exacted storage from him and compelled Mm to pay it. The learned and distinguished secretary decided, on appeal to Mm, that it was erroneously exacted. It was not then repaid, from a doubt whether it was regular to order it paid out of the treasury. On the accession to office of Secretary Bibb, he directed it to be paid by the collector of New York, as money illegally and improperly received from the party who paid it, as storage charged on goods of wMch he was the involuntary consignee, and which he declined to enter and receive. In 1849 the defendant in this case applied for a remission óf the duties upon a quantity of brandies imported into New York and consigned to Mm, and which were destroyed by fire in the conflagration of July, 1845. It is said in these papers that the brandies came in the brig “France” from La Rochelle, and were consigned to Mr. Wolfe in the manifest, and were sent to the public store, No. 27 Beaver street, as unclaimed for want of appearance at the custom house of any importer or owner to make entry at the time the vessel was - discharged. The. then secretary, Mr. Robert J. Walker, decided in conformity, he says, with the decisions of two of Ms predecessors in the case before mentioned, that by the destruction of the goods in the manner stated, and the absence of any bond to secure the duties, the duties on such unclaimed goods are lost to the United States, and no legal remedy for their recovery existed. The decisions of the secretary of the treasury, though not of the same authority as the judgment of judicial tribunals, are yet entitled to considerable weight upon questions relating to the construction of the revenue laws. Such questions are to be determined by him in the first instance, *445 and, until reversed by the courts, govern the conduct of the various officers of the customs. We admit the authentic reports of his determinations, not as binding precedents, but as some evidence upon disputed questions which appertain to his functions. We have looked into the papers produced by the plaintiff’s counsel, not as evidence of any fact in this case, because matters of fact can not be brought before us in that way, but as the decision, of a high officer upon a question of law connected with his department, and which we are called upon to decide. They are of the same general character as the determinations of courts of inferior jurisdiction, not binding upon us, but which are yet worthy of consideration, though their weight depends chiefly upon the reasonableness of the grounds upon which they proceed. Upon the case before us they are important as reflecting light upon the act of March, 1854. By the terms of that act it is essential, in order to the remission of the duties upon goods consumed by fire in a public warehouse, that they should be under bond. While no provision is made where the property, although found in such a warehouse, was,not under bond, and yet the apparent purpose is to discharge the owner of such goods, where his whole interest in them has b.een lost by such an accident. It has, I trust, been made apparent that the terms of the act are as broad as the occasion and the general intention could be. They could not be legally in a public store unless they were bonded, or had been sent there as unclaimed goods in consequence of the importer or consignee failing to appear and obtain a permit for landing. In the latter case no provision was necessary, as the settled practice of the treasury department was to consider the duties lost to the government when the goods had been destroyed by fire. Hence no such provision was made. It is presumable that acts respecting the collection of the customs and amendatory of or qualifying existing provisions of the revenue law are prepared at the depart *446 ment, as it is most proper they should be, considering the complex nature of the subject and the intricacy of the statute, and I have very little doubt but that the act of 1854 was so prepared. But, however that may bé, I am entirely satisfied that goods burned in a public store, which were sent and left there on account of not being claimed and permitted by the importer or consignee, do not render 'the consignee named in the ship’s papers liable to the payment of duties. Hence I am in favor of reversing this judgment and ordering a new trial.
All the judges being in favor of reversing the judgment, except Davies and Hogeboom, who expressed no opinion, judgment reversed.