## STATE OF NORTH DAKOTA v. PETER SCOTT.

### (163 N. W. 810.)

**Perjury — crime of — information for.**

1. Information examined, and *held* to state the crime of perjury.

**Court reporter — short-hand notes of — read in evidence — must be accurately taken — must not have been changed — stenographer — testimony of.**

2. Before the shorthand notes of a court reporter can be read in evidence, the stenographer must be willing to swear not only that such notes were accurately taken, but that they have not been changed or altered since the taking. This is *held* to have been the substantial import of the stenographer's testimony in the case at bar.

**Person — acting in a public office — regularly appointed thereto — presumption.**

3. There is a presumption that a person who has acted in a public office was regularly appointed thereto.

---

Note.—On sufficiency of averment in indictment or information for perjury as to jurisdiction or authority to administer oath, see note in 32 L.R.A. (N.S.) 142, which states that the modern statutory rule is that such matters are sufficiently averred by setting forth the substance of the offense, in what court or before whom the oath was taken, and that such court or person has competent authority to administer the oath.

County court — clerk of — oaths — administered by — law — question of — for court.

4. Whether the clerk of a county court is competent to administer an oath is a question of law for the court to pass upon.

Perjury — prosecution for — questions asked on former trial — materiality of — for the court.

5. In a prosecution for perjury the materiality of the questions asked on the former trial, and of the answers given thereto, is for the court, and not the jury, to pass upon.

Perjury — information for — distinct assignments — proof of one — sufficient.

6. Where, in an information for perjury, there are several distinct assignments, proof of any one of them is sufficient.

Witness — hostile to party against whom called — competent to show.

7. It is always competent to show that a witness is hostile to a party against whom he is called.

Opinion filed June 7, 1917.

Prosecution for perjury.

Appeal from the District Court of Ward County, Honorable *K. E. Leighton,* Judge.

Judgment for plaintiff.   Defendant appeals.

Reversed.

Statement of facts by Bruce, Ch. J.

This is a prosecution for perjury.   The information charges:

"That, heretofore, to wit, on or about the 28th day of January, in the year of our Lord, one thousand nine hundred and sixteen, at the county of Ward, in said state of North Dakota, one Peter Scott, late of said county of Ward and state aforesaid, did wilfully, unlawfully, feloniously, knowingly, and falsely commit the crime of perjury committed as follows, to wit:

"That at the said time and place at the regular January term, in the year of our Lord, one thousand nine hundred and sixteen, of the county court of Ward county, North Dakota, being then and there a county court of increased jurisdiction, at the city of Minot, in the said county, there came on to be tried before the said court in that term of the said court before the Honorable William Murray, then and there and still the judge of the said court, and before the jury duly impaneled

and sworn for that purpose by R. E. Hopkins, the duly appointed clerk of the county court of the said Ward county, North Dakota, a certain issue being then and there in due manner joined between the state of North Dakota, as plaintiff, and Peter Scott, as defendant, upon a certain criminal information then pending in the said court against him, the said Peter Scott, for the crime of keeping and maintaining a common nuisance within Ward county, North Dakota, and at and upon the trial of the said issue in the said court before the said judge and jury, to wit, on or about the 28th day of January, 1916, within the said county, Peter Scott, late of the said county and state, appeared and was produced as a witness on behalf of the said defendant in the said information, and was then and there sworn by the said R. E. Hopkins, clerk of the said county court of the said county, and he, the said Peter Scott, then and there took his corporeal oath as such witness before the said court that the evidence which he, the said Peter Scott, should give on the said trial, should be the truth, the whole truth, and nothing but the truth, the said R. E. Hopkins, as such clerk of the county court of Ward county, North Dakota, having then and there due and competent authority to administer said oath to the said Peter Scott in that behalf, and the said Peter Scott being sworn, as aforesaid, it then and there upon the said trial of the said issue became and was a material matter of inquiry as to certain occurrences within Ward county, North Dakota, during the period between the 1st day of October, A. D. 1914, and the 2d day of August, A. D. 1915, as to whether the said Peter Scott had sold any whisky or beer or any intoxicating liquors unto David Franzen or any other person or persons in the house in which he, the said Peter Scott, then resided, being the first house back of the Porter-Qualley-Nelson Grocery Store in Minot, Ward county, North Dakota, or whether during the period between October 1st, A. D. 1914, and August 2d, A. D. 1915, in the place of residence of the said Peter Scott, being the first house back of the Porter-Qualley-Nelson Grocery Store in Minot, Ward county, North Dakota, he, the said Peter Scott, had brought to any person or persons and delivered to such person or persons either beer or whisky which he, the said Peter Scott, had at the said time brought or delivered to such person or persons from some place within the said house, and then received money in payment of such beer or whisky from such person or persons, or whether

he, the said Peter Scott, had at any time during the period between October 1st, 1914, and August 2, 1915, in the said house, being the first house back of the Porter-Qualley-Nelson Grocery Store, received money from any person for beer or whisky and then procured such beer or whisky for and delivered it to such person or persons, such beer or whisky then and there taken by him, the said Peter Scott, from the cellar or some other place within the said house; and he, the said Peter Scott, having been sworn and having taken his corporeal oath at the time and place aforesaid, upon the said trial of the said issue, did wilfully, unlawfully, feloniously, knowingly, falsely, and corruptly, and contrary to his said oath, swear before the said court and jury, among other things, in substance as follows:

"In answer to the question: 'Did you sell any of these fellows he mentions or anybody else any beer in your house?' he, the said Peter Scott, replied, 'No, sir,' meaning and indicating thereby that in the first house back of the Porter-Qualley-Nelson Grocery Store and during the period between October 1st, 1914, and August 2d, 1915, he, the said Peter Scott, had not sold any beer to David Franzen or any other person or persons.

"In answer to the question: 'Now then, referring to this house, the first house back of the Porter-Qualley-Nelson Grocery Store and between October 1st, 1914, and August 2d, 1915, did you at any time in that house during that period sell either beer or whisky to any person?' he, the said Peter Scott, replied, 'No, sir,' meaning and indicating thereby that in this first house back of the Porter-Qualley Nelson Grocery Store and between October 1st, 1914, and August 2d, 1915, he, the said Peter Scott, had sold neither beer nor whisky to any person or persons.

"In answer to the question: 'Did you during that period between October 1st, 1914, and August 2d, 1915, at any time furnish to anybody beer in that house, and then have them pay by laying money on the table there and you take it up later on?' he, the said Peter Scott, replied, 'No, sir,' meaning and indicating thereby that in the first house back of the Porter-Qualley-Nelson Grocery Store during the period between October 1st, 1914, and August 2d, 1915, he, the said Peter Scott, had furnished no beer to any person or persons, and received his pay by picking up money that they had laid down on a table in payment of such beer.

"In answer to the question: 'During the period between October 1, 1914, and August 2, 1915, did you at any time furnish beer to anybody who came into your place, that was taken by you from the cellar in your house, after they had first paid you money in one of the rooms in your house, given the money to you?' he, the said Peter Scott, replied, 'No, sir,' meaning and indicating thereby that in the said first house back of the Porter-Qualley-Nelson Grocery Store in Minot, Ward county, North Dakota, between October 1, 1914, and August 2, 1015, he, the said Peter Scott, had at no time received money from any person or persons for beer in any room of that house and then brought the beer in exchange for such money from the cellar of the house.

"In answer to the question: 'Sometimes when you received money, either 35 cents or 70 cents or a dollar from Mr. Solberg or others in one room in your house, did you not as a matter of fact go down into the cellar of your own house and get the beer?' he, the said Peter Scott, replied, 'I did not,' meaning and indicating thereby that at the said time and place the said Peter Scott had at no time received either 35 cents or 70 cents or a dollar from Solberg or any other person or persons in one room in the said house, and then go into the cellar and secure the beer for such purchaser.

"In answer to the question: 'Did you during the period between October 1, 1914, and August 2, 1915, at the house just testified to, being the first house back of the Porter-Qualley-Nelson Grocery Store or at any other place in Ward county, North Dakota, sell beer or whisky to any person?" he, the said Peter Scott, replied, 'No, sir,' meaning and indicating thereby that in the said house, being the first house back of the Porter-Qualley-Nelson Grocery Store, in Minot, Ward county, North Dakota, and between October 1, 1914, and August 2, 1915, he, the said Peter Scott, had at no time sold beer or whisky to any person or persons.

"In answer to the question: 'During the period between October 1, 1914, and August 2, 1915, in the house just testified to, being the first house back of the Porter-Qualley-Nelson Grocery Store, Minot, Ward county, North Dakota, did you at any time receive money from any person and then bring to them and deliver to them beer which was at the time taken by you from some place in that house, either in the cellar or at any other place in the building?' he, the said Peter

Scott, replied: 'I answered that before. I answered no,' meaning and indicating thereby that in the said house, being the first house back of the Porter-Qualley-Nelson Grocery Store, Minot, Ward county, North Dakota, during the period between October 1, 1914, and August 2, 1915, he, the said Peter Scott, had at no time received money from any person or persons and then brought and delivered to them beer which he, the said Peter Scott, had at that time taken from the cellar or some other place in the said building.

"Whereas, in fact it was not true, and at the time of so swearing and stating the same the said Peter Scott knew that it was not true, that in the said house, being the first house back of the Porter-Qualley-Nelson Grocery Store in Minot, Ward county, North Dakota, and during the period between October 1, 1914, and August 2, 1915, he the said Peter Scott, had not sold beer or whisky to David Franzen or to any other person or persons, nor that he, the said Peter Scott, at the said time and place, had not received from any person or persons money for which he brought and delivered to said person or persons beer or whisky, which he, the said Peter Scott, had then and there taken and brought from some place in the cellar or other portion of the house and then received money from such person or persons in payment of the same, which said money such person or persons had put down on a table in the said house.

"Whereas, in truth and in fact, at said house being the first house back of the Porter-Qualley-Nelson Grocery Store, in Minot, Ward county, North Dakota, during the period between October 1, 1914, and August 2, 1915, the said Peter Scott did sell beer and whisky unto David Franzen and divers other persons in said house, and that the said Peter Scott at the said time and place did receive money from divers persons, and did in return for such money procure and deliver to such persons beer and whisky taken and brought by the said Peter Scott from the cellar or some other place in the said house, and that the said Peter Scott did at the said time and place bring beer and whisky from the cellar or some other place in the said house to divers persons who were then and there in other rooms of the said house, and did receive money which such person or persons had first placed upon a table in said room, all of which the said Peter Scott well knew, whereby he, the said Peter Scott, did then and there, as

aforesaid, wilfully, unlawfully, feloniously, knowingly, and falsely, and corruptly commit perjury.

"This contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of North Dakota."

*J. E. Burke* and *E. T. Burke,* for appellant.

Where oral evidence is relied upon exclusively to prove the crime of perjury, there must be two witnesses or one witness corroborated by circumstances proved by independent testimony. 30 Cyc. 1448.

To warrant the use of the court reporter's shorthand notes taken upon a former trial, the stenographer must swear that they were accurately taken, and have not been changed or altered in any way. State v. Longstreth, 19 N. D. 276, 121 N. W. 114, Ann. Cas. 1912D, 1317.

Defendant had the right to show the hostility of the witnesses who appeared against him, and the reasons for such hostility, and to deprive him thereof was reversible error. State v. Malmberg, 14 N. D. 523, 105 N. W. 614.

The trial court stated what was proved and admitted, told the jury what "amounted to the full measure of proof," commented upon the evidence, and this invaded the province of the jury. This was error. Comp. Laws 1913, § 10,822; Territory v. O'Hara, 1 N. D. 30, 44 N. W. 1003; State v. Peltier, 21 N. D. 188, 129 N. W. 451; State v. Barry, 11 N. D. 428, 92 N. W. 809.

*Wm. Langer,* Attorney General, *D. V. Brennan,* and *G. K. Foster,* Assistant Attorneys General and *O. B. Herigstad,* State's Attorney and *R. A. Nestos,* Assistant State's Attorney, for respondent.

The clerk of the county court may administer oaths to witnesses in criminal actions, and the court did not err in so instructing the jury. The law presumes that a person acting in a public office was regularly appointed thereto, that official duties are regularly performed, and that a court or judge acts within the lawful exercise of his jurisdiction. Comp. Laws 1913, §§ 7936, 7937; State v. Clough, 111 Iowa, 714, 83 N. W. 728; Cothran v. State, 39 Miss. 541; State v. Brown, 128 Iowa, 24, 102 N. W. 799; State v. Caywood, 96 Iowa, 367, 65 N. W. 385; State v. Swafford, 98 Iowa, 362, 67 N. W. 284.

Where in the indictment for perjury there are several distinct assign-

ments, proof of anyone of them is sufficient to support conviction.    30 Cyc. 1452.

BRUCE, Ch. J. (after stating the facts as above).    It is first alleged that the trial court erred in overruling an objection to the introduction of evidence under the information, on the ground that the latter did not state a cause of action.

The defendant and appellant asserts that "the information is grossly unfair and vicious.    We are in effect charged with pigging, with a penalty of perjury if convicted.    We are therein accused of false swearing in half a dozen instances, whereof there was no testimony produced. And to cap the climax, the information merely (if carefully read) charges that the 'said Peter Scott did then and there, as aforesaid, knowingly, falsely, and corruptly commit perjury.'    This, to our minds, states a conclusion and is a nullity as a pleading."

There is no merit in this objection.    The information may have contained more than was necessary, and may have been unfair and vicious.    The objection, however, was that it did not state a cause of action, and this is the only matter that we have to consider.    There is much more in the information than the statement of the matters of inducement in relation to the prosecution for the crime of keeping and maintaining a common nuisance.    It is stated that material questions were asked, that each of these questions was answered, "No," and that the truth was opposite to that testified to, and that the said Peter Scott had knowledge of this fact.    It also alleges that, in swearing to these facts, the said Peter Scott was knowingly, and falsely swearing to an untruth.    It then alleges that in so swearing the said Peter Scott wilfully, unlawfully feloniously, knowingly, falsely, and corruptly committed perjury contrary to the statute.

Nor is there any duplicity in the information.    There is no attempt to charge the crime of maintaining a common nuisance and to obtain punishment therefor, but merely a charge that in a prosecution for such crime the false statements were made.    It, too, seems to us that the statements made were in relation to material matters.

The next objection is that the court erred in overruling the objection of the defendant and appellant to the following question:

Q. You may produce such shorthand notes in the trial of State of

North Dakota v. Peter Scott, in the county court of Ward county, North Dakota. Was Peter Scott, who is the defendant in this action, asked the following question: "Now then, referring to this house back of the Porter-Qualley-Nelson Grocery Store, and between October 1, 1914, and August 2, 1915, did you at any time in that house, during that period, sell either beer or whisky to any person?" and did the defendant answer, "No, sir?"

The objection was that such testimony was incompetent, irrelevant, and immaterial; no foundation laid.

The examination which led up to the question was as follows:

"Q. Did you in the month of January, or January 28, 1916, act as official stenographer for the county court, Ward county, North Dakota?

A. Yes, sir.

Q. As such official stenographer did you take the testimony in the case of North Dakota v. Peter Scott, the defendant?

A. Yes, sir.

Q. In the trial of that action on January 28, 1916, did you as such official stenographer of the county court, Ward county, North Dakota, take the testimony of Peter Scott, who is the defendant in this case?

A. Yes, sir.

Q. Are you at this time able to read the testimony or from your shorthand notes, the testimony given by Peter Scott, in the trial of the case of State of North Dakota v. Peter Scott, as given on January 28, 1916, in the county court of Ward county, North Dakota?

A. Yes, sir.

Counsel for appellant contends that the rule now generally adopted is that, before the stenographer will be allowed to testify from his notes, rather than from his memory of the testimony, or from his memory as refreshed by such notes, that he must be willing to swear that he has such confidence in his notes that he will swear that the defendant testified as therein disclosed; that he must be willing to swear that the witness said so and so, because the notes so read, and he can swear that the notes are accurate. In other words that, if the stenographer bases his answers to the questions, "Did the witness testify

37 N. D.—8.

so and so?" on his perusal of the notes, and not on his memory or knowledge, he must be willing to swear not only that the notes were accurately taken, but that they have not been changed since they were taken.

This we believe to be the correct rule. Yet we believe that the witness in the case at bar practically met these requirements. He testified that he correctly wrote in shorthand the testimony given by Peter Scott; that the notes he read from were the notes taken at the trial, and that he was "able to read the testimony from his shorthand notes given by Peter Scott in the trial of the case of State of North Dakota v. Peter Scott *as given on January 28, 1916.*" He, it is true, did not say that the notes had not been changed. He did say, however, that they were correctly taken, and he did say that in reading from said notes he could read the testimony "as given on January 28, 1916." This we believe meets all of the requirements of the rule.

It is next urged that the trial court erred in instructing the jury, and violated the plain provisions of § 10822 of the Compiled Laws of 1913, and assumed to pass upon matters of fact. It is claimed that he erred in charging the jury as a matter of law that the clerk of the county court of Ward county is a *competent* and proper person to administer an oath to a witness in any criminal action, and also in charging them that "the matters hereinbefore set forth in the questions alleged to have been asked the defendant are matters which were *material* to the issues in the case then being tried in county court."

There was certainly no error in the charge as to the competency of the clerk of the county court. Section 7936 of the Compiled Laws of 1913 names, among other denominational presumptions, the presumption (14) that a person acting in a public office was regularly appointed to it.

Whether the clerk of a county court is competent to administer an oath is a question of law. State v. Clough, 111 Iowa, 714, 83 N. W. 728.

The materiality of the questions asked on the former trial, and of the answers given thereto, were also questions of law for the court. Cothran v. State, 39 Miss. 541; State v. Caywood, 96 Iowa, 367, 65 N. W. 385; State v. Swafford, 98 Iowa, 362, 67 N. W. 284; 30 Cyc. 1456.

Nor was any error committed by the trial court in charging the jury that "it is not necessary that the state prove all of said matters were testified to by the defendant knowingly, wilfully, and corruptly, but it is sufficient, and the defendant would be guilty, if the state proved all of the other material allegations of the information to be true, and that the defendant wilfully and knowingly testified falsely in any one particular stated.in this charge as being material matters at issue in the said case of State v. Scott in county court." The general rule is that "where, in the indictment for perjury, there are several distinct assignments, proof of any one of them is sufficient to support the indictment." 30 Cyc. 1452.

We believe, however, that error was committed in the case, and that the trial court erred in excluding the testimony of Mrs. Smith, the housekeeper, which tended to show bias upon the part of the witness Franzen against the defendant. The man Franzen was the principal witness in the case. He had been asked whether he had been fired out of Scott's house because he had given a party whereat men and women had been drinking beer. He hesitated and said that he could not remember the occurrence. He was then asked whether, when Mrs. Smith came home, she did not find him in the house with one or two other men and a couple of girls sitting around a keg of beer, and he answered, "No, sir." He was then asked, if immediately thereafter he did not come and make complaint in the case on trial, to which he again answered "No." Mrs. Smith was later called by the defendant to contradict Franzen's testimony, and was asked, "While Dave Franzen was in your house, did you come there one evening and find him there with some other people?" An objection was made to this question, and it was sustained. She was again asked, "Q. Does David Franzen owe you some money?" And an objection was again sustained. In this we think the court erred. Franzen, as we have before stated, was a material witness, and the evidence showed that he had been boarding at the house of the defendant, and the defendant sought to discredit the witnesses of the state by proof that the prosecution was merely spite work, and had been instituted by the man Franzen because he was incensed with the plaintiff on account of being turned out of his house and being asked for the payment of a bill. " 'It is always competent to show that a witness is hostile to the party against

whom he is called, . . . A jury would scrutinize more closely and doubtingly the evidence of a hostile, than that of an indifferent or friendly witness. Hence, it is always competent to show the relations which exist between the witness and the party against, as well as the one for, whom he is called.' If the witness denies his hostility or bias, this may be proved by other witnesses. The cross-examination would be of little value if the witness . . . could conclude the adverse party by his statements denying his prejudice or interest in the controversy. . . . Although it is the general practice to first interrogate the witness on cross-examination as to his feelings of bias or hostility, yet it is proper to prove the hostility of the witness by other competent witnesses who can swear to the fact." 5 Jones, Ev. § 828, pp. 142–149; State v. Malmberg, 14 N. D. 523, 525, 105 N. W. 614.

This evidence we believe to have been competent, and its exclusion under the circumstances of the case to have been prejudicial error.

The judgment of the District Court is reversed and a new trial ordered.

CHRISTIANSON, J. I concur in a reversal and in the foregoing opinion, but express no opinion on whether the rule contended for by appellant's counsel and discussed in that portion of the opinion covered by paragraph 2 of the syllabus is correct or not.