**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Orville S. CLAVEY, Defendant-Appellant.**

**No. 76–1926.**

United States Court of Appeals,
Seventh Circuit.

June 23, 1978.

George B. Collins, Chicago, Ill., for defendant-appellant.

George N. Gilkerson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER and WOOD, Circuit Judges.

PER CURIAM.

A petition for rehearing en banc in the above-entitled cause on the issue of disclosure of the grand jury testimony was granted on February 28, 1978, thereby vacating the decision of the original panel on this issue. *United States v. Clavey,* 565 F.2d 111 (7th Cir. 1977).

After rehearing en banc, Judges Fairchild, Swygert, Pell and Sprecher voted to reverse; Judges Cummings, Tone, Bauer and Wood voted to affirm. The court being equally divided on the question, the order of the district court on this issue is affirmed without opinion.

As to all other issues, petition for rehearing en banc was denied, and no rehearing en banc was held. Therefore, in all other respects, the opinion of the panel remains unchanged.

SWYGERT, Circuit Judge.

The court affirms the rulings of the district court by an equally divided vote and therefore without an opinion. I feel compelled, however, to file a separate statement because of an entirely new argument made at the last minute by Government counsel. The *en banc* hearing was granted only on the grand jury issue, and briefs by both parties were addressed prior to the argument on rehearing to that issue as framed by the majority of the original panel and the dissent. *See United States v. Clavey,* 565 F.2d 111 (7th Cir. 1977). The Government, however, chose to orally argue a position which it never before briefed or argued to either the district court or this court.

The Government now argues that even if the defendant was entitled to inspect a copy of his own grand jury testimony, the error in denying him that right was harmless because the defense of recantation was not available to him. For support the Government cites 18 U.S.C. § 1623(d) which provides that the recantation defense is available only "[if] it has not become manifest that such falsity has been or will be exposed." The Government now argues that it was so "manifest" and that therefore the recantation defense was not available to Clavey.

Until the argument on rehearing, the Government consistently maintained that Clavey was not entitled to inspect a copy of his grand jury testimony because he failed to demonstrate a particularized need. It was not until the *en banc* hearing that the Government argued that the defense was not even available.[1] If this issue is so dis-

---

1. The Government did "raise" the issue before Chief Judge Robson. On December 6, 1974 the

Government ended its reply to Clavey's first petition by stating:

positive and crucial as the Government now contends, I cannot understand why it was not argued before the district judge in the first instance or, in any event, before the original panel. Only at the eleventh hour did Government counsel advance its new position without the benefit of briefs and only on short notice to defense counsel. Regardless of the unfortunate posture of this issue at the rehearing argument, I have given the issue great deliberation. And, because I am convinced that the Government's new position is without merit, I believe I should state my reasons.

## A

At argument the Government contended that the phrase "has not become manifest that such falsity has been or will be exposed," means that the falsity must be exposed to the grand jury.[2] Even if the phrase is so interpreted, the Government cannot succeed as the facts will demonstrate.

At trial it was shown that Gene March, a private investigator, performed ten lie detector tests in 1972 for the Lake County Sheriff's Office. March was to receive $1,000 for this job. Prior to this performance, however, March and defendant Clavey, then Sheriff of Lake County, Illinois, agreed that March would kickback $200 to Clavey and $200 to Clavey's assistant, Jerome Schuetz. When March submitted his bill in 1973, he gave Clavey a check for $400 in exchange for a check in the amount of $1,000. On the face of the $400 check appeared the notation, "RT Loan." Clavey's defense at trial was that the $400 constituted repayment of a loan.

Prior to his indictment, Clavey appeared before the grand jury on September 18, 1974. Although Clavey denied that he ever received a kickback from March, he did say that he once loaned money to March. When asked about the amount, Clavey replied, "Oh, just a few dollars."

Clavey first retained his attorney on Sunday, November 24, 1974. The next day the attorney wrote the United States Attorney in which he made certain comments, summarized as follows:

—that the letter be considered as a "formal request" for a copy of a transcript of Clavey's grand jury testimony,

—that the purpose of his request was to advise Clavey on whether to recant pursuant to 18 U.S.C. § 1623,

—that the transcript be furnished before the grand jury was discharged, and

---

Finally, the Government states that Section 1623(d) is not directed at explaining testimony, but instead concerns the actions which a witness may take if he admits his testimony is false and then before the false declaration has substantially affected the Grand Jury proceeding or before it has become manifest that the falsity has been or will be exposed. Although petitioner has not yet admitted the falsity of his testimony, the Government states that petitioner's testimony was false, has substantially affected the Grand Jury proceedings, and that its falsity has been exposed to the Government and the Grand Jury.

On December 13, 1974 the Government stated at the end of a seven page reply to Clavey's second petition:

[Fourth], the Government reasserts that the falsity of petitioner's testimony has substantially affected the grand jury proceedings and that its falsity has been exposed to the Government and the grand jury.

Several comments are in order. The Government never alleged that it was manifest to Clavey that "the falsity had been or will be exposed," nor did it argue or even mention this issue in either of the two hearings before Judge Robson. In any event, Judge Robson could not have ruled in the Government's favor on this issue as it offered no factual support for its assertions. Finally, the Government's actions before the district court were utterly inconsistent with its present position. At the first hearing before Judge Robson, the United States Attorney's office assured the court and Clavey's attorney that the grand jury would be in session for some time, thereby implying that Clavey could return to the grand jury to recant.

2. At the hearing the Government asserted that the phrase means manifest to the Government. During the course of the argument, however, the Government appeared to retreat from this interpretation and rely primarily on the grand jury construction. Clearly the phrase cannot mean manifest to the Government. If it were so interpreted, a successful recantation defense would almost never be available.

—that the transcript will be accepted under any "restrictions as may be required to preserve the secrecy of the Grand Jury."

On December 4, 1974 March appeared before the same grand jury and read a prepared written statement.[3] At this appearance March's testimony about his employment by the sheriff's office and the kickback arrangement was substantially the same as that which he later gave at trial. In addition, March's prepared text included the following:

I met with Clavey alone in his office [on the afternoon of September 18, 1974]. At that time, Clavey asked me how I was and if I had been subpoenaed yet. I said I had not. This was not true. I then asked what he wanted to talk to me about. Clavey said, "Gene, that dàmn Schuetz told them downtown about that $400 cash that you gave us and about wiretapping." I said that I didn't know what he was talking about and that I did not know anything about wiretapping.

Also on December 4, 1974 an assistant United States attorney responded to defense counsel's letter of November 25. In this letter the Government counsel stated that if a copy of Clavey's grand jury testimony was desired, "an appropriate motion [would have to be made] before Judge Edwin A. Robson requesting a disclosure order under Rule 6(e)." Defendant's attorney filed such a petition on December 5, the following day.

From this review of the record it is clear that the falsity of Clavey's testimony could not have become manifest to the grand jury until December 4, 1974, the day March testified. With that indisputable fact in mind, it is equally clear that prior to December 4, specifically on November 25, Clavey by means of his attorney's letter requested an inspection of his grand jury testimony to determine if he should recant. Thus Clavey's intention was made known before the falsity of his testimony could have become manifest to the grand jury.

The Government argues that Clavey's intention did not become legally effective until December 5, when Clavey filed his first petition for disclosure. In support of its position the Government cites Rule 6(e) of the Federal Rules of Criminal Procedure.[4] This argument is, I submit, based on a technicality and does not take into consideration both the realities and the requirement of fairness.

In the letter written by his attorney on November 25, Clavey sought his grand jury testimony to determine whether there was anything in it to recant. Rather than responding immediately, Government counsel waited until December 4 to reply—the very day March appeared before the grand jury. It is evident that defense counsel's letter of November 25 had the effect of "tipping off" the Government. By waiting to respond until March's appearance, the Government sought to foreclose Clavey's chance of exercising a statutory defense. This tactic can be interpreted only as deliberate unfair treatment of Clavey.

The unfairness does not stop here. It is incongruous that at the hearing before Judge Robson on December 6, 1974, the Government did not argue (as it does now) that the recantation defense was no longer available to Clavey. Had this issue been

---

3. A copy of the grand jury transcript containing this statement was not filed in this court by the Government until the morning of April 14, 1978, the day of the *en banc* hearing.

4. Rule 6(e) provides in part:
  Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule.

presented, Judge Robson would undoubtedly have treated it and, if he had agreed, he would not have had to reach the question whether a particularized need was shown. Instead of pressing this point Government counsel assured Clavey's attorney and the court that the grand jury would be in session for some time—implying that the opportunity to recant was still available.

In my opinion the record is clear that at the time Clavey made his original request for his grand jury transcript it was not manifest to the grand jury that Clavey's testimony was false. Hence, the Government has failed to establish that the recantation defense was not available.

## B

Arguably 18 U.S.C. § 1623(d) means that it must be manifest to the grand jury witness that his falsity will be exposed, rather than manifest to the grand jury. Although this would appear to be the better view,[5] Clavey's recantation defense was available even under this interpretation.

The Government argued that the falsity of Clavey's grand jury testimony was manifest to Clavey just hours after he testified. Sole support is found in one sentence of March's grand jury statement wherein Clavey purported to have said: "Gene, that damn Schuetz told them downtown about that $400 cash that you gave us and about wiretapping."

The problem with this argument is that the district court has never determined when, if ever, the falsity became manifest to Clavey. It was not resolved by Judge Robson, and was not raised before the original panel. That Clavey was convicted on the count of false swearing merely means that the jury believed Clavey was lying to the grand jury. The conviction does not mean that on the afternoon of September 18 it was manifest to Clavey that the falsity of his testimony "has been or will be exposed" to the grand jury.

Even if we were to substitute March's one sentence from his prepared text for a hearing in which Clavey could have a chance to respond (a chance he has yet to have) and for a judicial determination, I still believe the Government has not met its burden of showing that a recantation defense was unavailable. Whom did Schuetz talk to "downtown"? Someone at the United States Attorney's office? The grand jury? Did Schuetz in fact appear before the grand jury or talk to someone at the United States Attorney's office before September 18? We simply do not know; the record is barren.

---

**5.** Several reasons support the view that the better interpretation is that it must be manifest to the witness, not to the grand jury. *See United States v. Swainson,* 548 F.2d 657, 663 (6th Cir.), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977). First is the language of the statute itself. The key words are that "it has not become manifest that such falsity *has been* . . . exposed." (Emphasis added.) If a prosecution witness testifies before a putative defendant (who perjures himself), recantation is never available for as soon as the putative defendant testifies, the falsity "has been exposed" to the grand jury. Clearly it could not have been the intent of Congress to let the availability of the recantation defense depend on the order in which the prosecution brings in the witnesses.

Policy reasons and logic also support the construction that it must be manifest to the witness rather than the grand jury. The purpose of the recantation defense is to induce grand jury witnesses to give truthful testimony. *United States v. Anfield,* 539 F.2d 674, 679 (9th Cir. 1976). This policy is furthered if witnesses are allowed to correct previously made false statements without incurring the risk of prosecution by doing so. But to discourage witnesses testifying falsely and then recanting as soon as they learn that the grand jury has learned or will learn of their deceit, the statute permits the defense only when witnesses do not know that the grand jury has been or will be exposed to their perjury. Thus the provision balances two competing interests.

Finally, support is found in the legislative history. The House Report to Title IV of the Organized Crime Control Act of 1970 states that the recantation provision is modeled after New York Penal Law § 210.25. [1970] U.S. Code Cong. & Admin.News at 4023–24. Although the New York law on its face is as vague as the federal provision, its legislative history indicates that the statute codifies case law. Case law in New York is clear that it is the witness, not the grand jury, to whom the falsity must be manifest. *See People v. Ezaugi,* 2 N.Y.2d 439, 161 N.Y.S.2d 75, 78, 141 N.E.2d 580, 583 (1957).

In summary, I am convinced that no matter how the crucial clause appearing in section 1623(d) is interpreted, the Government should fail in its contention that the recantation defense was not available and that for the reasons set forth in my dissent in the original panel decision, the defendant should have been allowed to inspect his grand jury testimony.

Finally, it is with great reluctance that I speak about the Government's delay until oral argument at the *en banc* hearing to present its new position. Twice before the district court and twice before this court (before the original panel and in response to the petition for rehearing),[6] the Government did not argue its present position. Only on the day prior to the argument to the *en banc* court did Government seek to supplement the record with materials which were available for more than three years in order to lay the evidentiary basis for its new argument. Significantly, this material was not before Judge Robson. Significantly also, the copies of this supplemental record did not reach members of this court prior to argument. Only during the rehearing argument did the Government set forth its new challenge to defendant's attempt to assert a recantation defense.

PELL, Circuit Judge.

I agree with the statement of Judge Swygert and join therein. I add, however, that I cannot conceive that the phrase in 18 U.S.C. § 1623(d), "has not become manifest" can refer to any situation other than manifestness to the witness who desires to recant.

---

6. The Government also had an opportunity to raise the argument when Clavey sought to suppress his grand jury testimony in the spring of 1975. It did not do so; its argument again was limited to Clavey's purported failure to show a particularized need.