**STATE of North Dakota, Plaintiff and Appellant,**

**v.**

**Dora HANSON, Defendant and Appellee.**

**Cr. No. 734.**

Supreme Court of North Dakota.

Feb. 24, 1981.

---

Larry E. Stern, Asst. State's Atty., Fargo, for plaintiff and appellant.

Mack, Moosbrugger, Ohlsen, Dvorak & Senger, Grand Forks, for defendant and appellee; argued by Richard A. Ohlsen, Grand Forks.

PEDERSON, Justice.

This is an appeal by the Cass County state's attorney (State) from a district court's dismissal of a perjury charge against appellee, Dora Hanson (Hanson). The appeal was taken pursuant to § 29–28–07(1), NDCC. See, State v. Jelliff, 251 N.W.2d 1 (N.D.1977); State v. Howe, 247 N.W.2d 647 (N.D.1976). We affirm.

The facts of this case, that Hanson committed perjury and then recanted, are not disputed. As a witness in a probate hearing, she testified falsely regarding a meeting she had with the deceased testator.

Her testimony was directly contradicted by two other witnesses and even her own diary, but Hanson subsequently resumed the stand and cleaved to her original story, even though she was well aware of the challenge to her credibility. After the hearing, but before any substantive ruling by the probate court, Hanson drew an affidavit in which she admitted lying. She was later charged with perjury pursuant to § 12.1–11–01, NDCC.

Before trial, Hanson offered to prove up the necessary elements for a retraction defense, § 12.1–11–04(3), NDCC, and moved the court to rule as a matter of law whether or not a defense was established. The State conceded, and the court ruled, that § 12.1–11–04(3) provided for a bar to prosecution, not simply a defense at trial. The elements of the retraction defense were then treated as issues of law, which, whatever the preliminary determination of the court, would not be presented to the jury. To the satisfaction of the court, Hanson proved that her perjury was retracted in accord with the requirements of § 12.1–11–04(3), and the case was dismissed before it could go to a jury.

Section 12.1–11–04(3) reads:

"It is a defense to a prosecution under sections 12.1–11–01 . . . that <u>the actor retracted the falsification</u> in the course of the official proceeding or matter in which it was made, if in fact he did so <u>before it became manifest that the falsification was or would be exposed and before the falsification substantially affected the proceeding</u> or the matter." [Emphasis added.]

The court determined that Hanson had in fact retracted her testimony. It appears to have construed the second underscored clause to require that the retraction be made before the falsification becomes manifest <u>to the court</u> hearing the testimony. Finally, the third underscored clause was construed to require that the retraction be made before the falsification influenced the <u>outcome</u> of the case. Hanson called the judge of the probate court to testify before the district court. He stated that Hanson's testimony before the probate court was not transparently perjurious at the time, and that the presence of conflicting evidence merely presented an issue of credibility. We deem this testimony of the judge of the probate court to be of significance in determining the factual issues of whether or not Hanson thought the falsification had been discovered or was certain to be discovered, as well as whether or not the falsification did, in fact, materially affect the proceeding prior to the retraction. The trial court found that Hanson submitted her retraction before the final ruling in the probate matter. The fact that additional time, investigation and witnesses were needed, on account of Hanson's testimony, was held not to have "substantially affected the matter."

 In a prosecution for perjury, the State must show that the false statement was material to the cause before the court. No showing of materiality was made, yet Hanson apparently does not contest this issue. The materiality of a falsehood is a legal question for the court, *State v. Scott*, 37 N.D. 105, 163 N.W. 810 (1917); 62 A.L. R.2d 1027, § 2, yet the trial court did not premise dismissal on a finding of immateriality. Therefore, in the absence of a dispute or an express holding, we proceed directly to the issues raised by the State.

 As the district court determined, § 12.1–11–04(3) establishes not an affirmative defense to be asserted at trial but a bar to the commencement of trial. Whether or not a defendant is entitled to the benefit of a defense is a question of law for resolution by the trial court, with the assistance of an evidentiary hearing if necessary. If the court finds the defense established, prosecution of the case is foreclosed, but if the court determines that prosecution may continue, the defendant cannot re-submit the issue at trial. Evidence of retraction may be introduced at trial to show lack of intent to falsify, but not to revive the possibility of excusing the offense. *United States v. Kahn*, 472 F.2d 272, 284 (2d Cir. 1973); *United States v. Norris*, 300 U.S. 564, 57 S.Ct. 535, 539–40, 81 L.Ed. 808 (1937); see

*Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Because § 12.1–11–04(3) is an exceptional statutorily granted defense and not a determination of guilt or innocence, the defendant has the burden of proving by a preponderance of the evidence that the elements of the statute have not been met. *United States v. Moore*, 613 F.2d 1029, 1044 (D.C.Cir. 1979); contrast, *United States v. Clavey*, 578 F.2d 1219, 1222 (7th Cir. 1978).

Section 12.1–11–04(3) was taken verbatim from § 1355(3) of the Final Report of the National Commission on Reform of Federal Criminal Laws. The Commission, noting that "the prime interest of the government is in obtaining truthful information," stated the rationale for allowing retraction, pursuant to the rule, as a defense to prosecution:

"The proposed provision on retraction seeks to provide opportunity for retraction during the course of the proceeding while avoiding the dangers of this policy noted by the Supreme Court [in *United States v. Norris*, 57 S.Ct. 535 (1937)]. The possibility that a witness may be encouraged to lie, believing that he can recant at the end of the hearing if his falsehood is discovered, is disposed of by specifying that the retraction must be made before it becomes manifest that the falsification is or will be exposed. The possibility that the hearing body may be seriously hindered by the delay in finding the truth is avoided by specifying that the retraction must be made before the falsification substantially affects the proceeding. Given this provision, then, the ability of an investigating body to learn the truth is enhanced. The declarant, though he may, in a moment of panic or without sufficient thought on the consequences, have lied, still has some time to think about his error and reverse himself. There is, then, an effective incentive to 'discovery of truth [which], made before the proceeding is concluded, can do no harm to the parties.' [*United States v. Norris, supra*.]" Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. I, pp. 665–6, 674.

The statute attempts, then, to encourage rather than punish truthtelling by a witness, yet also to preserve the purity of motive behind the retraction and avoid subversion of the proceeding. See, *Clavey, supra*, at 1222, n. 5.

The federal rule regarding recantation of false testimony, 18 U.S.C. § 1623(d), is similar to the North Dakota rule.

"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

The two prerequisites to retraction—"has not become manifest" and "has not substantially affected"—are separated by a disjunctive, unlike § 12.1–11–04(3) which has a conjunctive relation. While this suggests greater liberality in the federal rule, federal courts have not uniformly allowed defendants to establish a retraction defense by showing compliance with only one of the rule's conditions. See, *Moore, supra*. Our state statute does not contain the same ambiguity, and to have the benefit of the defense the defendant must retract in accordance with *both* provisions. Whatever the difference between the statutes on that count, the prerequisites of each are sufficiently similar in themselves to occasion a review of the construction given those in § 1623(d).

### I. *Before it Became Manifest*

■ Cases interpreting § 1623(d) appear without exception to require that the retraction occur before exposure of the falsification becomes manifest to the witness. *Clavey, supra*, at 1222, n. 5; *United States v. Tucker*, 495 F.Supp. 607, 615 (E.D.N.Y. 1980). Section 1623(d) is modeled on a New York statute, Penal Law § 210.25 (McKinney), which in turn is based upon a rule propounded in *People v. Ezaugi*, 2 N.Y. 439, 161 N.Y.S.2d 75, 141 N.E.2d 580 (1957). *Moore, supra*, at 1042; *United States v.*

*Lardieri*, 506 F.2d 319, 322–23 (3d Cir. 1974). One part of the original *Ezaugi* rule allows retraction only "when no reasonable likelihood exists that the witness has learned that his perjury is known or may become known to the authorities." We believe this portion of the *Ezaugi* rule, though not drawn from a statute like ours, states concisely the construction ours ought to be given. Thus, we hold that the exposure of perjury becomes "manifest" when the defendant knows or has reason to know that the authorities are or will be aware of the falsification. The crucial matter is the defendant's motive in retracting. It may be important to know whether or not the authorities have already discovered, or are certain to discover, the falsification when we are assessing the defendant's state of mind, but that alone does not determine the validity of the retraction defense. It is not the state of mind of the authorities that controls.

Some federal cases withholding the defense have held by implication that the defendants failure to retract false testimony before controverted by other witnesses makes exposure manifest. *United States v. Swainson*, 548 F.2d 657, 663 (6th Cir. 1977); *Kahn, supra*, at 283; *United States v. Mitchell*, 397 F.Supp. 166, 176–77 (D.C.D.C. 1974). In other cases, including *Ezaugi*, where also the defendant was denied the defense, the recantation was inspired by actual knowledge that the authorities had learned of the perjury. *Tucker, supra*, at 614; *United States v. Crandall*, 363 F.Supp. 648, 655 (W.D.Penn.1973). As we have indicated, the defendant's motive as deduced from all the evidence is the determining factor. The mere presence of conflicting testimony does not make manifest the exposure of falsification.

■ In the instant case, the probate judge has stated that credibility, not perjury, was his primary consideration in weighing Hanson's testimony. The record does not indicate that Hanson suspected, or had reason to suspect, the probate court was on to her attempt to deceive. Courts should refrain from speculating, when there is an absence of proof, that genuine regret and a desire to set matters straight did not motivate the retraction. Section 12.1–11–04(3) was designed to foster truthfulness, and every instance of inconsistent testimony should not be viewed as perjury.

## II. *Substantially Affected the Proceeding*

Our research has turned up very little regarding the "substantially affected" component. The federal cases cited thus far have considered the rule only in the context of perjury before a grand jury. One court held that a presumption of substantial effect arises after the grand jury "acts." *Tucker, supra*, at 613. The court in *Crandall, supra*, at 654–55, decided that perjury which resulted in a two-month delay of a grand jury indictment was substantial enough to deny the defendant the benefit of his retraction.

The instant case, of course, involves falsification in a regular court proceeding. The district court determined that the "substantially affected" language prohibited use of the defense only when the false testimony influenced the *outcome* of the case in which the testimony was given. We cannot agree that the defense is so broadly available. Circumstances are imaginable where false testimony has not yet altered the final result in a case but where, nonetheless, the proceedings have been "substantially affected." Precisely where the line ought to be drawn will inevitably be an ad hoc, case-by-case decision.

While we do not concur in the district court's construction of this part of the statute, we do affirm its conclusion that Hanson should be allowed the retraction defense. The probate court was not greatly hampered in the conduct of its business. One additional witness was called to discredit Hanson's false testimony and another was questioned at greater length than would otherwise have been necessary. The probate judge stated that Hanson's testimony involved "a very minor part of the case." Furthermore, he received notice the day after she testified that she had disavowed her earlier story, and thus his deliberations

were not tainted. These facts do not indicate Hanson's mendacity seriously obstructed the proceeding. Perjury should not, of course, be lightly overlooked. Yet the statute excuses it on conditions which, we conclude, are met here.

The dismissal of the case is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.